UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA ANN AGUILAR, <br><br>　　　　　Plaintiff, <br><br>v. <br><br>CAROLYN W. COLVIN, <br><br>　　　　　Defendants. | Civil No. 13cv891 BEN (NLS) <br><br>**REPORT AND RECOMMENDATION FOR ORDER:** <br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REVERSAL AND/OR REMAND [Doc. No. 11-1]; and** <br><br>**(2) GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT [Doc. No. 12-1].** |

　　　　Plaintiff Dana Ann Aguilar brings this action under the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the decision of the Social Security Administration ("Commissioner" or "Defendant") to deny her claim for disability and supplemental security income benefits. This case was referred for a report and recommendation on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B). After considering the moving papers, the administrative record, and the applicable law, the court **RECOMMENDS** that Plaintiff's motion for summary judgment and for reversal and/or remand be **DENIED**, and that Defendant's cross motion for summary judgment be **GRANTED**.

# I. FACTUAL BACKGROUND

## A. Procedural History.

Aguilar filed applications for a period of disability, social security disability insurance benefits (SSD), and supplemental social security income (SSI) under the Social Security Act (Act) on November 30, 2007. Administrative Record (AR) 177-183. Aguilar alleges her condition rendered her unable to work on January 1, 2002. *Id.* The request was denied initially on May 6, 2008, and upon reconsideration on July 23, 2008. AR 20. On September 10, 2008, Aguilar filed a written request for hearing. *Id.*

An Administrative Law Judge (ALJ) held hearings on February 18, 2010 and March 28, 2011. AR 54-76, 37-53. Aguilar testified at the first hearing. AR 54-76. Aguilar and her daughter, Destiny Merritt, testified at the second hearing. AR 37-53. Based on the testimony and documentary evidence, the ALJ issued a decision denying Aguilar's application for benefits. AR 17-36. Aguilar then filed an administrative request to review the decision. AR 15-16. The Appeals Council denied the request for review, and the ALJ's decision became final. AR 8-13.

Aguilar filed this complaint for judicial review of Defendant's final decision. She argues the ALJ committed reversible error by improperly discrediting the treating physician's evidence and opinion, failing to consider the testimony of a third-party witness, failing to consider the impact of obesity on her other ailments, and not basing the decision on substantial evidence. She asks this court to reverse and remand for further administrative proceedings.

## B. Documentary Medical Evidence.

### 1. Consulting Physicians.

Aguilar has a history of back disorder, asthma, and carpal tunnel syndrome. AR 23. She was also diagnosed with affective mood disorder and an anxiety disorder. AR 25, 423-433, 834-845.

Douglas Dolnak, D.O., conducted a psychiatric board evaluation of Aguilar on April 22, 2008. AR 23, 423-433. He reported Aguilar's chief complaint as physical

impairments with feelings of sadness and worry about her physical limitations and pain. AR 23, 425-426. Aguilar mentioned she was taking Lexapro and the medication was somewhat helpful in alleviating her symptoms of depression and anxiety. AR 23, 427. Dr. Dolnak reported Aguilar's mood was dysphoric with some mild anxiety, but her thought content and processes were clear and goal directed. AR 23-24, 426, 428-429. Aguilar exhibited some feelings of helplessness, frustration, and decreased self-esteem, but she denied any suicidal and homicidal ideation, plan, or intent. AR 24, 429. Based on his assessment of Aguilar, Dr. Dolnak diagnosed her with a major depressive disorder, recurrent, current episode mild severity, but generally acceptable functioning. AR 24, 429-430. Dr. Dolnak opined that despite Aguilar's diagnosis, she would be able to complete the normal workday routine without severe limitations. AR 24, 430-431.

On October 6, 2010, Aguilar visited Gregory M. Nicholson, M.D., for an updated psychiatric evaluation. AR 24, 834-845. Dr. Nicholson reported Aguilar was depressed due to her physical problems. AR 24, 837. Dr. Nicholson noted Aguilar's treating physician prescribed Xanax and Lexapro. AR 24, 837. During his evaluation, Aguilar exhibited a depressed mood, but did not demonstrate any psychomotor agitation or retardation. AR 24, 837. Aguilar was diagnosed with an anxiety disorder, psychotic disorder, bipolar disorder, and depression. AR 24, 840. Dr. Nicholson reported that despite her mental impairments, Aguilar would be able to perform work activities on a consistent basis, with only a mild limitation. AR 24, 841.

### 2. Treating Physicians.

On March 10, 2011, Eric Levte, M.D., completed a General Relief Employability Evaluation form. AR 28, 282-283. He concluded Aguilar would be unable to work through the end of March 2012 due to her diagnoses of cervicalgia, lumbago, and anxiety. AR 28, 283.

Michelle Lamantia, M.D., reviewed Aguilar's medical history on April 8, 2011. AR 28, 881-884. She reported Aguilar would be able to lift and carry "twenty pounds occasionally and twenty-five pounds frequently"; sit for six hours in an eight-hour

workday and/or walk for less than two hours in an eight-hour workday, with a sit/stand at-will option and the ability to change positions every twenty to thirty minutes. AR 28, 881-884. Dr. Lamantia reported Aguilar would never be able to climb, stoop, kneel, crouch, crawl, or frequently balance. AR 28, 883-884. Dr. Lamantia noted that while Aguilar would not be precluded from handling, fingering, or feeling, she would be limited in her ability to work around heights and extreme temperatures, and move machinery. AR 28, 884. She further noted that Aguilar would not be limited in her ability to work around chemicals or dust. AR 28, 884.

### C.   Relevant Testimony from the Hearing.

#### 1.   Plaintiff.

Aguilar testified that she stopped working in 2001 after she was laid off. AR 58. Since 2001, she searched for employment and accepted positions, but her subsequent employments did not last longer than one day. AR 73. Aguilar testified that her chronic back pain ultimately led to her inability to work. AR 60. As a result of her back pain and obesity, Aguilar had gastric bypass surgery. *Id.* Following her gastric bypass surgery, she experienced side effects including violent gagging, insomnia, and internal bleeding. *Id.* Aguilar testified that she experienced pain daily and fluctuates between sitting and laying down to deal with the pain. AR 63.

Aguilar testified that she also experienced heart palpitations. AR 61. Her cardiologist stated the palpitations resulted from Aguilar's lack of exercise. *Id.* Aguilar reported the heart palpitations eventually stopped, but started recurring again in October 2009. *Id.*

#### 2.   Destiny Merritt.

Aguilar's daughter, Destiny Merritt, lives with and cares for her mother. AR 46-47. She testified that she does not believe her mother can work a full-time job because Aguilar reacts poorly to stressful situations. AR 48-49. When Aguilar faces stressful situations, she dry heaves, cries, experiences stomach issues, and lies on the floor and rocks. AR 48. Merritt did not think any job would accommodate her mother's reaction

to stressful situations. AR 49.

Merritt also testified that she must remind her mother to do normal activities, such as shower and change her clothes. AR 47. She believes her mother's embarrassment about her health issues prevents her from socially interacting with others. AR 48.

### D. ALJ's Written Decision.

The ALJ found that Aguilar last met the insured status requirements of the Social Security Act through December 31, 2006. AR 22. She did not engage in substantial gainful activity from the alleged date of the onset of her disability, January 1, 2002, through the date last insured of December 31, 2006. *Id.*

#### 1. Rejection of the Treating Physicians' Opinions.

The ALJ considered and rejected Dr. Levte's testimony that Aguilar was disabled as unsupported. AR 28. Specifically, he found that Dr. Levte based Aguilar's diagnosis of cervicalgia, lumbago, and anxiety solely on claimant's subjective complaints. *Id.* He found no objective evidence to support Dr. Levte's diagnosis, and there was no evidence of testing and examination of Aguilar's extremities. *Id.* The ALJ also found that there is no evidence to support Dr. Levte's medical report that Aguilar would be unable to work through the end of March 2012. *Id.*

Further, the ALJ considered and rejected Dr. Lamantia's testimony that Aguilar was disabled as unsupported. AR 28. The ALJ noted Dr. Lamantia was a new treating physician to Aguilar, and he accorded Dr. Lamantia's medical assessment less weight because she failed to base her assessment on current x-rays and clinical records. *Id.* He cited a letter sent by Dr. Lamantia admitting she had no current x-rays or MRI scans, and her medical assessment of Aguilar was based on prior x-rays. AR 28, 882.

The ALJ instead relied on opinion evidence from the State's consulting physicians to support the conclusion that Aguilar is capable of performing work. AR 28. Regarding the physical impairment, on April 22, 2008, Dr. Dolnak evaluated her alleged heart impairment and reported that Aguilar's results from the Holter study were essentially normal. AR 29, 461. Further, the treadmill stress test indicated essentially normal results

with no significant ST/T changes in sub-maximal exercise.  AR 29, 462.

Regarding the mental impairments, Dr. Dolnak also conducted a consultative psychiatric evaluation where Aguilar's chief complaints were physical impairments, which caused some depression.  AR 23, 425.  Dr. Dolnak diagnosed Aguilar with major depressive disorder, recurrent, current episode mild severity.  AR 24, 429-430.  Dr. Nicholson affirmed the results of the consultative psychiatric evaluation on October 6, 2010.  AR 24, 840.  Dr. Nicholson also diagnosed Aguilar with anxiety disorder, psychotic disorder, bipolar disorder, and depression.  AR 24, 840.  However, both consulting physicians concluded that her mental impairments would minimally limit her ability to perform work activities on a consistent basis.  AR 24, 430-431, 841.

Ultimately, the ALJ found that the objective evidence does not establish an impairment likely to produce disabling pain or other limitations as alleged for a period of 12 or more continuous months.  AR 29.  In sum, the ALJ disagreed with Dr. Levte that Aguilar suffered from cervicalgia, lumbago, and anxiety.  AR 28.  He also disagreed with Dr. Lamantia's medical assessment that Aguilar would have a limited residual functional capacity.  *Id.*

### 2.    Rejection of Plaintiff's Testimony.

The ALJ considered and rejected Aguilar's testimony that she suffered from severe impairments due to her heart defect, depressive disorder, and anxiety disorder.  AR 25.  As noted above, the ALJ found that Aguilar exhibited mild symptoms of heart impairment, but had generally acceptable heart function.  AR 23.  Further, her objective medical test results from the Holter study and treadmill stress test were essentially normal.  AR 29.

Regarding her depressive and anxiety disorders, the ALJ found that Aguilar suffered from medically determinable mental impairments of affective mood disorder and an anxiety disorder.  AR 25.  The ALJ relied on the evaluations of the consulting physicians and found that her mental impairments, singly and in combination, do not cause more than a minimal limitation in her ability to perform basic mental work

activities, and are therefore non-severe. *Id.*

### 3. Determination of Non-Disability.

The ALJ found that through the last date insured, Aguilar could perform past relevant work as an Office Manager and as a Floor Manager. AR 29. As for her Residual Functional Capacity (RFC)[1], the ALJ concurred with Dr. Dolnak's RFC assessment. The ALJ found that although Aguilar "would have some occasional difficulties with maintaining concentration, persistence and safety," she could "complete the normal workday routine without severe limitations and would be able to perform work activities without special or additional supervision." AR 24, 423-433. Dr. Nicholson affirmed this opinion on October 6, 2010. AR 24, 834-845. Further, no physician–either a treating physician or State Agency physician–found Aguilar's impairments to meet or equal a listed impairment. AR 29. Ultimately, the ALJ found that Aguilar was not disabled and that she could perform her past work as an Office Manager and Floor Manager, as well as a significant number of jobs existing in the national economy. AR 29-30.

## II. DISCUSSION

### A. Evaluating Social Security Disability Claims.

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C. § 423(d). The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

First, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If not, then the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of the

---

[1]The RFC is the most an individual can still do despite his or her limitations. S.S. Ruling 96-8p.

regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment is severe, the ALJ must then determine whether it meets or equals one of the "Listing of Impairments" in the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she must be found disabled. *Id.* If the impairment does not meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

Here, at Step 1 the ALJ determined that Aguilar was not engaged in any substantial gainful activity. AR 22. At Step 2, the ALJ found Aguilar's back disorder, asthma, and carpal tunnel syndrome are "severe" impairments as defined in the Regulations. AR 23. However, the ALJ also found that Aguilar's alleged disability due to heart impairment, a depressive disorder, and an anxiety disorder are not "severe" impairments as defined by the Regulations. AR 25. Moving on to Step 3, the ALJ found Aguilar did not suffer from an impairment or combination of impairments that met or medically equaled one of the impairments in the Social Security Regulations. *Id.*; *see* 20 C.F.R. 404.1520(d). At Step 4, the ALJ found that Aguilar had the residual functional capacity to perform a full range of medium work, but with the limitations of frequent climbing, balancing, bending, stooping, kneeling, crouching, and crawling. AR 25. Additionally, Aguilar should be limited with performing fine and gross manipulations and she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other things. AR 25-26. Finally, at Step 5 the ALJ found that Aguilar is capable of performing her past work as an Office Manager and Floor Manager, as well as a significant number of jobs existing in

the national economy. AR 29-30.

**B.    Assertion of Error.**

In challenging the ALJ's denial of benefits, Aguilar argues that the ALJ erred by 1) improperly discrediting the treating physicians' evidence and opinions; 2) failing to consider the testimony of a third-party witness; 3) failing to consider the impact of obesity on her other ailments; and 4) not basing the decision on substantial evidence.

Where, as here, the Appeals Council denies a request for review, the ALJ's decision becomes the final agency decision reviewed by the court. *Batson*, 359 F.3d at 1193 n.1.

### 1.    The ALJ's Rejection of the Treating Physicians' Opinions.
#### *a.    Legal Standard.*

Where a treating doctor's opinion is not contradicted by another doctor, the Commissioner can only reject the treating doctor's opinion for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the treating doctor is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons based on "substantial evidence" in order to properly reject a treating physician's opinion. *Id.* at 830-831. The opinion of an examining physician alone can constitute "substantial evidence" because it rests on an independent examination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Moreover, "[w]hen confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Id.* Finally, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). A failure to properly consider the treating opinion is reversible error. *Lester*, 81 F.3d at 829-830.

#### *b.    Whether the ALJ Cited Specific and Legitimate Reasons for Rejecting Dr. Lamantia's Opinion.*

The ALJ rejected the opinion of two treating physicians, Dr. Levte and Dr. Lamantia. AR 28. Aguilar only argues that the ALJ erred when he gave less weight to

Dr. Lamantia's opinion. Dkt. No. 11-1 at 19. The ALJ rejected Dr. Lamantia as a new treating physician because she only based her opinion on prior x-rays and clinical records. *Id.* Aguilar asserts that Dr. Lamantia formulated a treatment plan based on these x-rays and clinical records, and thus had sufficient knowledge of Aguilar's medical condition. *Id.* at 20.

Reliance on the opinions of non-treating physicians can constitute specific and legitimate reasons to reject a treating doctor's opinions. *Morgan v. Apfel*, 169 F.3d 595, 602 (9th Cir. 1999). But "[a] report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984) (internal quotations omitted).

Here, the treating physician, Dr. Lamantia, found that Aguilar would be able to lift and carry "twenty pounds occasionally and twenty-five pounds frequently"; sit for six hours in an eight-hour workday and/or walk for less than two hours in an eight-hour workday, with a sit/stand at-will option and the ability to change positions every twenty to thirty minutes. AR 28, 881-884. Dr. Lamantia reported Aguilar would never be able to climb, stoop, kneel, crouch, crawl, or frequently balance. AR 28, 881-884. Dr. Lamantia noted that Aguilar would be limited in her ability to work around heights and extreme temperatures, and move machinery. AR 28, 881-884. She further noted that Aguilar would not be limited around chemicals or dust. AR 28, 881-884. The ALJ compared these diagnoses with the conclusions from non-treating doctors who reviewed Aguilar's medical records.

The ALJ found that Dr. Lamantia's findings were not totally credible. AR 28. The ALJ first cited Aguilar's daily activities. *Id.* The ALJ found Aguilar independently cared for her own personal hygiene, prepared simple meals, occasionally gardened, and occasionally drove a vehicle. AR 28, 428, 838. The ALJ concluded these types of activities do not indicate a disabling level of impairment of the claimant's residual functional capacity as suggested by Dr. Lamantia. AR 28.

Next, the ALJ considered the opinions of the State Agency medical consultants who determined Aguilar's RFC. AR 29. The ALJ found that Aguilar has the RFC to perform medium work as defined by 20 CFR 404.1567(c) and 416.967(c). AR 25. The ALJ noted that Aguilar would be limited in her ability to balance, bend, stoop, kneel, crouch, crawl, and engage in frequent climbing. *Id.* Additionally, Aguilar would be limited with performing fine and gross manipulations and she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. AR 25-26. The ALJ found that while Aguilar's medically determinable impairments could reasonably cause her alleged symptoms, her statements describing the intensity, persistence, and limiting effects of these symptoms were not credible because they are inconsistent with her RFC assessments. AR 29. The ALJ noted that no physician–either a treating physician or State Agency physician–ever opined that Aguilar's symptoms met or equaled a listed impairment. *Id.* The court, therefore, finds that Aguilar's daily activities and the opinion of the State Agency medical consultants constitute specific and legitimate reasons for the ALJ to reject Dr. Lamantia's opinion that Aguilar would have such a limited RFC. *See Morgan*, 169 F.3d at 602.

### 2. Failure to Consider Third Party Testimony.

#### a. *Legal Standard.*

An ALJ must consider testimony from others regarding the claimant's impairments, restrictions, daily activities, efforts to work, or any other relevant statements. 20 C.F.R. 404.1512(b)(3); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Competent lay witness testimony "cannot be disregarded without comment." *Nguyen v. Cater*, 100 F.3d 1468, 1467 (9th Cir. 1996). The ALJ need not provide express reasons for rejecting testimony from each lay witness. 20 C.F.R. 404.1529(c)(3); *Molina*, 674 F.3d at 1114. If the ALJ provides germane reasons for rejecting the testimony of one witness, the ALJ need only point to those reasons when rejecting similar testimony from a different witness. *See Valentine v. Comm'r of the Social Security Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

1   Although the ALJ may err by failing to explain reasons for disregarding the lay
2   witness's testimony, the error is harmless where it is "inconsequential to the ultimate
3   nondisability determination." *Stout v. Comm'r of the Social Security Admin.*, 454 F.3d
4   1050, 1055 (9th Cir. 2006); *Carmickle v. Comm'r of the Social Security Admin.*, 533
5   F.3d 1155, 1162 (9th Cir. 2008); *Molina*, 674 F.3d at 1115.

### b.   *Whether the ALJ Erred in Failing to Expressly Reject Destiny Merritt's Testimony.*

8   Aguilar argues that the ALJ erred by failing to provide specific reasons for
9   rejecting the third-party testimony. Dkt. No. 11-1 at 23. Aguilar further contends that
10  because the ALJ failed to comment on the third-party testimony, this qualifies as
11  reversible error. *Id.*

12  Here, Merritt's testimony repeated many of the symptoms her mother describes in
13  her own testimony. For example, Merritt testified her mother becomes "nervous and
14  anxious" and gags when she becomes stressed. AR 48. At the same hearing, Aguilar
15  testified she experiences anxiety and gags when placed in stressful situations. AR 42.
16  Merritt also reiterated her mother's previous testimony that Merritt does most of the
17  chores in the house because of her mother's medical condition. AR 47. Finally, Merritt
18  repeated her mother's testimony when she testified that she must remind her mother to
19  take a shower and change her clothes. AR 48, 67.

20  The court finds that the ALJ erred when he failed to comment on Merritt's
21  testimony. The record makes no mention of Merritt's testimony, and lay witness
22  testimony "cannot be disregarded without comment." *Nguyen*, 100 F.3d at 1467. The
23  ALJ considered Destiny Merritt's testimony but did not expressly reject it. AR 26.

24  While the ALJ did not expressly reject Merritt's testimony, he did provide specific
25  reasons for rejecting Aguilar's testimony. Specifically, the ALJ found that the Aguilar's
26  medically determinable impairments could reasonably be expected to cause the alleged
27  symptoms. AR 29. However, the ALJ found Aguiliar's statements concerning the
28  intensity, persistence and limiting effects of these symptoms were not credible to the

extent they are inconsistent with the RFC assessment. *Id.* Because Aguilar and Merritt's testimonies were similar, the ALJ need only point to the germane reasons for rejecting Aguilar's testimony when rejecting Merritt's similar testimony. *Molina*, 674 F.3d at 1114; *Valentine,* 574 F.3d at 694.

Here, the ALJ erred when he failed to point to germane reasons in rejecting Merritt's testimony. Even though Merritt's and Aguilar's testimonies are similar, the ALJ must still identify the reasons he rejects Merritt's testimony. *Molina*, 674 F.3d at 1115. The ALJ failed to do so. The court finds the ALJ erred in failing to explain the reasons for disregarding Merritt's testimony because the ALJ failed to comment on her testimony.

### c. *Whether the Failure To Address Destiny Merritt's Testimony Constitutes Harmless Error.*

The ALJ failed to explain his reasons for rejecting the lay witness's testimony. But Merritt's testimony did not describe any limitations beyond those which Aguilar describes herself. Merritt testified Aguilar gags in social situations, has multiple visceral reactions to stress, she lays down and rocks on the floor, requires reminders and cannot live on her own, and her symptoms cause her to tune out of conversations. Dkt. No. 11-1 at 23. Comparing Aguilar's and Merritt's testimony, the symptoms Merritt described are substantively the same as Aguilar's characterization of her own symptoms. The ALJ considered and rejected Aguilar's testimony. AR 29. Specifically, the ALJ determined that Aguilar's claim that her mood and anxiety disorders made her unable to work was contradicted by her evaluations by both Dr. Dolnak and Dr. Nicholson. *Id*. Because the ALJ validly rejected all the limitations described by the Aguilar, the ALJ's failure to give specific reasons for rejecting Merritt's testimony did not alter the ultimate nondisability determination. Accordingly, the ALJ's error was harmless. *Molina*, 674 F.3d at 1122 (the ALJ's failure to consider testimony from family members was inconsequential to the ultimate nondisability determination and, therefore, considered harmless error).

### 3. Failure to Consider Plaintiff's Obesity.

#### a. *Legal Standard.*

The ALJ must determine the effect of obesity on a claimant's other impairments and determine whether it increases the severity of another impairment or the claimant's functional limtation. *Celaya*, 332 F.3d at 1181-83. Social Security Rules provide that obesity is considered a "severe" impairment "when[,] alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Title II and XVI: Evaluation of Obesity*, SSR 02-1p (S.S.A Sept. 12, 2002). To determine the severity of obesity, the ALJ must conduct an "individualized assessment of the impact of obesity on an individual's functioning." *Id.*

#### b. *Whether the ALJ Erred in Failing to Consider the Impact of Obesity on Other Ailments.*

Aguilar argues that the ALJ should have considered her obesity in combination with her other ailments. Dkt. No. 11-1 at 24. According to Aguilar, her height, weight, and body mass index at the time of the initial hearing indicate that she is obese, and the ALJ had a duty to consider obesity, singly or in combination, with her other impairments. *Id.*

Here, Aguilar did not list obesity as a basis for her disability application. Further, Aguilar did not present any evidence that her disability impaired her ability to work. No physician–either a treating physician or State consulting physician–attributed any functional limitations to her obesity. Aguilar's obesity claim is a new and separate basis not raised in the administrative hearing. Because the obesity claim was not previously raised at the administrative hearing, the ALJ need not consider it now. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to review issues not argued in the opening brief). Further, Aguilar did not present any evidence that her obesity caused any functional limitations. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) (the ALJ did not err by failing to address obesity because claimant did not

demonstrate functional limitations as a result of her obesity). The court finds the ALJ did not err in failing to consider the impact of obesity on Aguilar's other ailments.

### 4. Substantial Evidence.

#### a. *Legal Standard.*

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Id.*; *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld. *Batson*, 359 F.3d at 1193. Further, when medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are the exclusive functions of the agency. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The reviewing court cannot reinterpret or re-evaluate the evidence however much a re-evaluation may reasonably result in a favorable outcome for the plaintiff. *Batson*, 359 F.3d at 1193.

#### b. *Physical Impairment.*

The ALJ's opinion regarding Aguilar's physical impairment is supported by substantial evidence because the ALJ cited to evidence which did not indicate a disabling level of Aguilar's RFC. AR 28. In rejecting the treating physician's opinion, the ALJ pointed to evidence that demonstrated that Aguilar independently cared for her own personal hygiene, prepared simple meals, occasionally gardened, and occasionally drove a vehicle. AR 28, 428, 838. The evidence of Aguilar's daily activities would likely be considered by a reasonable mind when evaluating the level of her physical impairment, and therefore, qualifies as substantial evidence. *Osenbrock*, 240 F.3d at 1162. Accordingly, this court affirms the denial of benefits because the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Batson*, 359 F.3d at 1193.

*c.     Mental Impairment.*

The ALJ's opinion regarding Aguilar's mental impairment is supported by substantial evidence because the State Agency medical consultants, Drs. Dolnak and Nicholson, both concluded that Aguilar's mental impairment did not meet or equal listing level limitations. AR 29. Dr. Dolnak diagnosed Aguilar with major depressive disorder, recurrent, current episode mild severity. AR 24, 430-431. Dr. Nicholson affirmed Dr. Dolnak's findings and diagnosed Aguilar with anxiety disorder, psychotic disorder, bipolar disorder, and depression. AR 24, 840. Both Drs. Dolnak and Nicholson concluded that her mental impairments would minimally limit her ability to perform work activities on a consistent basis. AR 24, 430-431, 841. In rejecting a treating physician's opinion, reliance on the consulting physician's opinion is sufficient to constitute substantial evidence. *Lester*, 81 F.3d at 830-831. Accordingly, this court affirms the denial of benefits because the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Batson*, 359 F.3d at 1193.

### Conclusion

Based on the preceding discussion, this court concludes that the ALJ's denial of benefits is supported by substantial evidence. Accordingly, the court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, and that Defendant's motion for cross motion for summary judgment be **GRANTED**.

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and serve a copy on all parties on or before **March 28, 2014**. The document should be captioned "Objections to Report and Recommendation." Any response to the objections shall be filed and served on or before **April 4, 2014**.

///
///
///
///

Failure to file objections within the specified time may affect the scope of review on appeal. *Baxter v. Sullivan*, 923 F.2d 1391. 1394 (9th Cir. 1991).

**IT IS SO ORDERED**

DATED: March 14, 2014

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court