FILED

14 APR 22 AM 11: 34

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DS

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA ANN AGUILAR, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Officially as Acting Commissioner of the Social Security Administration, <br><br> Defendant. | CASE NO. 13-CV-891-BEN (NLS) <br><br> **ORDER:** <br><br> **(1) ADOPTING REPORT AND RECOMMENDATION;** <br><br> **(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REVERSAL AND/OR REMAND** <br><br> **(3) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> **(4) OVERRULING OBJECTIONS** <br><br> [Docket Nos. 11, 12, 14] |

On April 12, 2013, Plaintiff Dana Ann Aguilar commenced an action seeking judicial review of the Commissioner of Social Security's final decision to deny her application for disability insurance benefits and supplemental security income benefits. (Docket No. 1). Aguilar filed a Motion for Summary Judgment on November 12, 2013. (Docket No. 11). Defendant filed a Cross-Motion for Summary Judgment on December 2, 2013. (Docket No. 12). On March 14, 2014, U.S. Magistrate Judge Nita L. Stormes issued a Report and Recommendation which recommended that this Court deny Aguilar's Motion for Summary Judgment and grant Defendant's Cross-Motion

for Summary Judgment. (Docket No. 14). Aguilar filed a timely Objection to the Report and Recommendation on March 27, 2014. (Docket No. 15).

# I. BACKGROUND

The procedural history of this matter and a summary of the administrative record has been laid out in the thorough Report and Recommendation issued by the Magistrate Judge. As this history is well-known to the parties, this Court adopts the Magistrate Judge's description of the administrative record and procedural history. A short summary of relevant events is laid out below.

### A. Procedural History

Aguilar filed applications for disability and supplemental social security income benefits under the Social Security Act on November 30, 2007. (AR 177-83). Aguilar claims her condition rendered her unable to work on January 1, 2002. (*Id.*) The request was initially denied on July 23, 2008, and Aguilar filed a written request for a hearing on September 10, 2008. (AR 20).

A hearing was held on February 18, 2008 before an administrative law judge (ALJ). (AR 54-76). A second hearing was held on March 28, 2011. (AR 37-53). The ALJ issued a decision denying Aguilar's application on May 9, 2011. (AR 20-31). The Appeal Council denied Aguilar's request to review the decision, and the ALJ's decision became final. (AR 8-13, 15-16).

Aguilar now seeks judicial review of the decision. She argues that the ALJ committed reversible error by (1) improperly discrediting a treating physician's evidence and opinion, (2) failing to consider the testimony of a third-party witness, (3) failing to consider the impact of obesity on her other ailments, and (4) not basing the decision on substantial evidence.

### B. ALJ'S Written Decision

The ALJ found that Aguilar last met the insured status requirements through December 31, 2006. (AR 22). She did not engage in substantial gainful activity from the alleged date of onset, January 1, 2002 through December 31, 2006. (*Id.*) He found

that Aguilar had the following severe impairments: a back disorder, asthma, and carpal tunnel syndrome. (AR 23). He concluded that Aguilar did not have an impairment or combination of impairments that met one of the listed impairments. (AR 25). The ALJ determined that Aguilar has a residual functional capacity to perform medium work, with certain limitations. (AR 25-26). He concluded that her residual functional capacity allowed her to perform past relevant work as an office manager and as a floor manager. (AR 29). He therefore found that Aguilar was not disabled from January 1, 2002 to the date the decision. (AR 30).

## II. STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant is required to show two things. First, she must show that she suffers from a medically determinable impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of twelve months or more. *See* 42 U.S.C. § 423(d)(1)(A). Second, she must show that the impairment renders her incapable of performing the work that she previously performed, or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated pursuant to the Social Security Act specify the process that the Social Security Administration uses to determine whether an applicant is disabled. 20 C.F.R. § 404.1520. First, the agency considers whether the claimant is presently working in any substantial gainful activity. If so, he or she is not disabled. If not, the agency considers whether the claimant's impairment is severe. If not severe, he or she is not disabled. If the impairment is severe, the agency then considers whether the impairment meets or equals a specific impairment listed in the Listing of Impairments. If so, the applicant is disabled. If not, the agency considers whether the claimant is able to do any other work. If not, the claimant is disabled. If there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520; *see also Tackett v. Apfel*, 180 F.3d

1094, 1098-99 (9th Cir. 1999). The burden on steps one through four rests on the applicant, but the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants who are not disqualified at step five are eligible for disability benefits. *Id.*

An applicant may seek judicial review of a final agency decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). A district court determines de novo any part of a Magistrate Judge's Report and Recommendation that has been properly objected to. FED. R. CIV. P. 72(b)(3). A final decision may only be disturbed if the ALJ's findings are based on legal error, or are not supported by "substantial evidence in the record as a whole." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000).

Findings of fact are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Id.*

## III. DISCUSSION

### A. Treating Physician Testimony

In rendering his decision, the ALJ considered the testimony of Aguilar's treating physicians, Dr. Levte and Dr. Lamantia. Dr. Levte opined that Aguilar could not work and Dr. Lamantia concluded that Aguilar had a very limited residual functional capacity. (AR 28). The ALJ gave the opinions of these physicians, "less weight . . . than they may otherwise merit." (AR 28). Aguilar contends that the Magistrate Judge

erred in 1) requiring only specific and legitimate reasons for discrediting Dr. Lamantia's opinion, and 2) finding that Aguilar's testimony regarding her limited daily activities and the opinions of non-treating state agency physicians satisfied the specific and legitimate reasons standard.

Ninth Circuit case law distinguishes between opinions from three kinds of physicians: treating physicians, examining physicians who do not treat the patient, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general matter, a treating physician's opinion generally carries more weight than a non-treating physician, and an examining source has more weight than a non-examining source. *Id.*

As a general matter, a "treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (citing Social Security Ruling (SSR) 96-2p). Where a treating physician's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing reasons." *Lester*, 81 F.3d at 831. However, where the treating physician's opinion is contradicted by another doctor, the ALJ "may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

"An ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Brown*, 799 F.2d 1403, 1408 (9th Cir. 1986). The ALJ cannot simply state that the medical opinions are not supported by sufficient objective findings, or are contrary to the preponderant conclusions mandated by the objective findings, even when the objective factors have been listed. *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ must set forth his own interpretations and explain why they, and not the doctors', are correct. *Id.* at 421-22.

### I. The Appropriate Standard for Rejecting Dr. Lamantia's Opinion

Aguilar argues that Dr. Lamantia's opinion was not contradicted, and that the heightened "clear and convincing" reasons standard applies. She points to the fact that the Magistrate Judge did not find that Dr. Lamantia was not a treating physician, or cite any other relevant doctor opinion that contradicted Dr. Lamantia. (Obj. at 2).

The record indicates that Dr. Lamantia's opinion regarding Aguilar's residual functional capacity had been contradicted. Dr. Lamantia opined that Aguilar could sit for six hours in an eight-hour workday, and could stand and/or walk for less than two hours in an eight-hour workday, with the option to sit/stand at will and the ability to change positions every twenty to thirty minutes. She further stated that Aguilar could not climb, stoop, kneel, crouch, or crawl, could only reach occasionally, and that she had environmental restrictions as to heights, moving machinery, and temperature extremes. However, the ALJ noted that no other physician assessed such a limited residual function capacity, and referenced the state agency reviewing physician's opinion on residual capacity. (AR 28-29). As such, Dr. Lamantia's opinion was contradicted.

### ii. The ALJ Did Not Err in Determining There Were Specific and Legitimate Reasons to Disregard Dr. Lamantia's Testimony

As Dr. Lamantia was a treating physician whose testimony was contradicted, the ALJ was required to give specific and legitimate reasons for giving little weight to Dr. Lamantia's opinion. Aguilar argues that the ALJ failed to do so. In reaching his conclusions, the ALJ discussed in detail the relevant medical evidence and medical opinions, and justified the weight given to various pieces of evidence. The ALJ provided ample reason to give Dr. Lamantia's testimony little weight. Dr. Lamantia had not been Aguilar's treating physician for very long when she stated her opinion. The ALJ pointed to the fact that Dr. Lamantia admitted that she had no current imaging when she gave the opinion, and relied on 2002 x-rays for her 2011 opinion. (AR 28). Additionally, Lamantia's opinion on Aguilar's residual capacity was inconsistent with

Aguilar's report of her own daily activities. These reasons are sufficient to give less weight to Dr. Lamantia's testimony.

### B. Failure to Consider Destiny Merritt's Testimony

The Magistrate Judge concluded that it was error for the ALJ to fail to comment upon the testimony of Aguilar's daughter, Destiny Merritt. (R&R at 12). Merritt lives with her mother and testified at the second hearing regarding her mother's daily activities and gave information about her mother's alleged ailments. The Magistrate Judge noted that the ALJ provided specific reasons for disregarding Aguilar's testimony, finding that her statements about the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the residual function capacity assessment. (*Id.* at 13). As Merritt's testimony was similar to her mother's, the ALJ would only to have needed to point to germane reasons for rejecting Aguilar's testimony when rejecting Merritt's testimony. *See id.*; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). However, as the ALJ failed to do so, he committed an error. No party objects to the conclusion that the ALJ erred in failing to comment upon Merritt's testimony.

Aguilar contends that the Magistrate Judge incorrectly concluded that this error was harmless. The burden of showing that an error is harmful normally falls upon the party attacking the agency determination. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The Magistrate Judge concluded that Merritt did not describe additional limitations beyond what Aguilar testified to, and that the symptoms described were "substantively the same" as Aguilar's own characterizations. (*Id.*) The Magistrate Judge noted that the ultimate nondisability determination was not altered by the error, because the ALJ had already rejected the limitations argued by Aguilar.

In her Objection, Aguilar points to specific testimony given by Merritt that she contends went beyond the testimony given by Aguilar. (Obj. at 3). Aguilar argues that if Merritt's testimony were credited, that it would not have been "inconsequential" to the ultimate disability determination. (*Id.* at 4).

Aguilar claims the following testimony of Merritt expanded or provided new information regarding Aguilar's ailments: Aguilar lays on the couch all day because she is really sick (AR 46); she does not leave the house often (AR 47); Merritt does all the chores around the house (AR 47); if Aguilar tries to cook, then she burns things (AR 47); Aguilar does not shower regularly and does not do so unless told to (AR 48); prior to the hearing, she laid down and rocked on the floor while crying, which she does in other stressful situations (AR 48, 49); she had to be calmed out of her symptoms before she could get in the car to go to the hearing (AR 49); she could not live on her own due to needing reminders for everything (AR 49); her need to lay down and rock on the floor would keep her from working at any job (AR 49); and her symptoms caused her to tune out of conversations (AR 50). Aguilar further claims that in the Functional Report, Merritt described her observations of Aguilar's mental symptoms, including losing money, an inability to finish tasks, an inability to communicate, and an inability to follow instructions. (AR 278).

This Court has compared Merritt's testimony and Aguilar's testimony, with special attention to the comments highlighted by Aguilar. This Court concurs with the Magistrate Judge that Merritt did not describe any additional limitations. The symptoms Merritt described are substantively the same as Aguilar's characterization of her own symptoms. For example, Aguilar testified that her stress and anxiety does not allow her to function, so she basically just stays at home (AR 43); that she had to lay down prior to the hearing (AR 42); that Merritt helps her with everything, including cooking for her (AR 44); that she does very few chores around the house (AR 68); that Merritt gives her reminders to do things such as shower and go to appointments; (AR 44); and that she has problems remembering things (AR 43, 65-66). Merritt did not provide any additional meaningful testimony. The fact that Merritt testified to her mother laying on the couch all day, needing to be calmed down before the hearing, and tuning out of conversations are not beyond the scope of limitations which Aguilar describes herself.

The Ninth Circuit has upheld an ALJ's determination, in spite of a failure to give reasons for rejecting lay testimony, where the lay testimony described the same limitations as other testimony, and the ALJ's reasons for rejecting other testimony applied with equal force. *Molina*, 674 F.3d at 1122. Here, the ALJ found Aguilar not credible, determining that her claims about the impact of her mood and anxiety disorders was contradicted by two doctors. (AR 23-25, 29). He also found that her statements about the intensity, persistence, and limiting effects of her symptoms was not credible to the extent they were inconsistent with the residual functional capacity assessment. (AR 29). Although Merritt added supplemental details, her account of Aguilar's limitations is substantially similar to her mother's. The same reasons for rejecting Aguilar's testimony would apply equally to Merritt's additional details. The additional information would thus be inconsequential to the nondisability determination, and the failure to specifically comment upon her testimony was harmless error.

### C. Presentation of Evidence on Obesity

Aguilar argues that the ALJ erred in failing to consider her obesity.

It is sometimes appropriate for an ALJ to consider the impact of obesity, even if it does not meet the listing criteria. *Celaya*, 332 F.3d at 1181. Even if an impairment is not "severe," it may, when considered with limitations or restrictions due to other impairments, be critical to the outcome of a claim. *Id.* at 1181-82. Where appropriate, the ALJ must determine the effect of obesity on other impairments and its effect on the claimant's ability to work and general health, given the presence of these impairments. *Id.* at 1182.

This responsibility can be triggered even if the claimant does not raise obesity as a disabling factor. In *Celaya*, the Ninth Circuit found that an ALJ had a responsibility to include obesity in the analysis where (1) obesity was raised implicitly in the report of symptoms, (2) it was clear from the record that the claimant's obesity was at least close to the listing criterion, and (3) the claimant was pro se, and the ALJ's

observation of the claimant and the information in the record "should have alerted" the ALJ to the need to develop the record with respect to the claimant's obesity. *Id.* The *Celaya* court emphasized that the claimant was illiterate, unrepresented, and "very likely never knew that she *could* assert obesity as a partial basis for her disability." *Id.* at 1183. Further, the court pointed out that the ALJ is not a "mere umpire" and has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel." *Id.* (citations omitted).

However, in *Burch v. Barnhart*, 400 F.3d 676, 682 (2005), the Ninth Circuit distinguished *Celaya* in determining that an ALJ was not required to consider the effects of obesity. The *Burch* court noted that there was no evidence in the record that the claimant's obesity exacerbated other impairments, except possibly her back pain, and "[m]ore significantly," that the claimant was represented by counsel. *Id.* The court noted that an ALJ is not required to discuss the combined effects of impairments or compare them to a listing in any equivalency determination, "unless the claimant presents evidence in an effort to establish equivalence." *Id.* at 683 (citations omitted). The only evidence in the *Burch* record concerning obesity were notes from doctors that observed weight gain, indicated that the claimant was obese, and recommended that the claimant participate in a supervised weight loss program. *Id.*

Aguilar argues that evidence of obesity was presented to the ALJ in testimony and through the medical records. (Obj. at 4). She argues that the ALJ therefore had a responsibility to consider the effect of obesity on other conditions and perform an individualized assessment of the impact of obesity on her functioning. (*Id.*)

The Magistrate Judge correctly concluded that the ALJ was not required to specifically address the impact of obesity on Aguilar's ailments because Aguilar did not sufficiently raise the issue. As demonstrated in *Burch*, the mere presence of a mention in the record that the claimant was obese is insufficient to require the ALJ to explicitly consider the issue in his or her written opinion. This Court has reviewed the

record for mentions of obesity. Aguilar, who proceeded with the assistance of counsel, did not list obesity as a basis for the disability application and did not present evidence that it impaired her ability to work. No physician attributed functional limitations to obesity, and Aguilar did not present evidence to suggest that obesity caused any functional limitations. This Court can find nothing in the record that should have alerted the ALJ to a need to raise the issue and further develop the record, and Plaintiff does not point to any specific testimony or record. This Court cannot conclude that the ALJ had a responsibility to raise and address this issue.

### D. Substantial Evidence

Finally, Aguilar challenges the ALJ's decision on the basis that the determinations regarding Aguilar's physical limitations and non-severe mental health condition were not supported by substantial evidence. (Obj. at 5).

#### i. Physical Impairment

There was substantial evidence to support the ALJ's finding that Aguilar was not disabled. The Magistrate Judge noted that the ALJ pointed to evidence of Aguilar's daily activities, which did not indicate a disabling residual functional capacity. (R&R at 15; AR 28-29).

Aguilar argues that the daily activities cited are "not reasonably inconsistent with activities a physically disabled person might perform." (Obj. at 6). Aguilar points to the testimony of Merritt who discussed the fact that Aguilar is limited in performing such activities. Aguilar argues that, in light of the evidence of the treatment records, a reasonable mind would not accept these activities as adequate to support the ALJ's conclusion that her residual functional capacity allowed her to do medium work. Aguilar points to a lengthy list of items in the record, including a history of auto accidents, a variety of diagnoses, her medications, the results of imaging studies, and the persistence of symptoms despite treatment. (Obj. at 6-7).

This Court has considered the ALJ's reasoning in the context of the entire record, with attention to Merritt's testimony and the medical record notes highlighted

by Aguilar. This Court determines that the ALJ's determination was supported by substantial evidence. Review of the decision indicates that, in reaching his conclusion, the ALJ relied upon Aguilar's daily activities, objective evidence in the medical record, and the opinions of the physicians. (AR 28-29). The ALJ provided sufficient justification for his decision to give little weight to the testimony of Aguilar, as well as the opinions of the treating physicians. He pointed to specific pieces of medical evidence to support his conclusions. As a reasonable mind could accept such facts as adequate to support the ALJ's conclusions, the ALJ did not err.

### ii. Mental Impairment

Aguilar argues that the consulting physicians only performed short evaluations of Aguilar, and that their testimony is not substantial evidence in light of the entire record. (Obj. at 7-9). Aguilar discusses her past treatment for anxiety and depression, and points to places in the medical records where doctors noted mental health signs and symptoms. For instance, she highlights a history that includes, but is not limited to, panic attacks, sleep problems, difficulty concentrating, depressed mood, and crying. (*Id.* at 8). Aguilar also points to the testimony of Merritt, who testified about "extreme anxiety and depression causing panic attacks, emotional collapse, social isolation, poor memory, and lack of concentration." (*Id.* at 8).

The ALJ's opinion that Aguilar was not rendered disabled by mental impairments was also supported by substantial evidence. The ALJ's conclusion was supported by the testimony of two state agency medical consultants who determined that Aguilar's mental impairment did not meet or equal listing level limitations. (AR 29). The ALJ properly justified giving less weight to the opinions of Aguilar's treating physicians, and did not find Aguilar's statements about the intensity, persistence and limiting effects of her symptoms to be credible. As discussed above, the ALJ's reasoning regarding Aguilar's testimony applies equally to Merritt's testimony. Looking at the record as a whole, the medical evidence and opinions of two consulting examiners is sufficient to constitute substantial evidence which a reasonable mind

could accept as adequate to support the ALJ's conclusions.

## CONCLUSION

Based on the foregoing discussion, the Report and Recommendation is **ADOPTED**. Aguilar's Motion for Summary Judgment is **DENIED** and Defendant's Cross-Motion for Summary Judgment is **GRANTED**. Aguilar's Objection is **OVERRULED**.

**IT IS SO ORDERED.**

Dated: April 22, 2014

HON. ROGER T. BENITEZ
United States District Judge